IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BOBBY B.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20-CV-537 |
| | ) |
| KILOLO KIJAKAZI,[2] Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Bobby B. ("Bobby") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1381f. Bobby alleges that the Administrative Law Judge ("ALJ") erred by failing to properly weigh the opinion evidence relating to his physical impairments, and by failing to properly consider his impairments on a function-by-function basis. I conclude that substantial evidence does not support the Commissioner's decision to discount the opinions of Bobby's treating physicians. Accordingly, I **RECOMMEND GRANTING in part** Bobby's Motion for Summary Judgment (Dkt. 14), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 17) and **REMANDING** this case for further administrative proceedings consistent with this opinion.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court's review is limited to determining whether substantial evidence supports the Commissioner's conclusion that Bobby failed to demonstrate that he was disabled under the Act.³ Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the

---

³ The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion fails to explain how he weighed the physician opinions in the record.

## CLAIM HISTORY

Bobby filed for SSI and DIB in February 2018, claiming that his disability began on August 8, 2017, due to cervical spinal stenosis, arthritis, chronic pain in his back, neck and shoulders, chronic headaches, bilateral feet pain and irritable bowel disease. R. 16, 332. Bobby's date last insured was December 31, 2023; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 30; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Bobby's applications at the initial and reconsideration levels of administrative review. R. 81–110. On September 17, 2019, ALJ Michael Dennard held a hearing to consider Bobby's claim. R. 36–68. Counsel represented Bobby at the hearing, which included testimony from vocational expert Robert Jackson. On October 25, 2019, the ALJ entered his decision analyzing Bobby's claims under the familiar five-step process[4] and denying his claim for benefits. R. 16–30.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the

The ALJ found that Bobby was insured at the time of the alleged disability onset and that he suffered from the severe impairments of cervical spine degenerative disc disease and radiculopathy, and lumbar spine degenerative changes. R. 20. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 21. The ALJ concluded that Bobby retained the residual functional capacity ("RFC") to perform a range of light work. R. 21. Specifically, Bobby can frequently operate hand controls and reach overhead bilaterally; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, stoop, kneel, and crawl; frequently balance and crouch; and occasionally work at unprotected heights and around hazardous machinery. Id.

The ALJ determined that Bobby is unable to perform his past relevant work as an assembler in a truck plant or landscaper. R. 28. However, the ALJ determined that Bobby could perform other work in the national economy, such as marker and cashier. R. 29. Thus, the ALJ determined that Bobby is not disabled. R. 30. Bobby appealed the ALJ's decision and the Appeals Council denied his request for review on August 17, 2020. R. 1–6.

## ANALYSIS

### Medical Background

Bobby underwent cervical spine fusion surgeries in 2014 and 2017. R. 435. Raymond Harron, D.O, performed the cervical fusion in 2017 and continued to monitor Bobby's progress thereafter. R. 440–41. After the surgeries, Bobby continued to report neck pain, headaches, difficulty moving his neck and holding it in a fixed position. R. 48–52. Six weeks post-surgery, Bobby reported improvements, but noted intense muscular spasms in his neck on the right side

---

claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

while riding in a car. R. 524. Bobby's physical exams from August 2017 through April 2018 reflected objective findings of cervical spine tenderness, muscle spasms, limited range of motion in flexion, extension and lateral side bending, and a trigger point muscle at the base of Bobby's skull. R. 520–25, 589, 619.

Bobby treated with pain management specialist Tejal Raju, M.D., throughout the relevant period, and consistently reported neck and upper back pain. R. 588–623, 628–633, 674–79, 737–39. Bobby also treated with his primary care provider William Skewes, M.D., post-surgery, and reported ongoing neck pain. R. 645–64, 694–722. Post-surgery, Bobby was prescribed a variety of treatments, including creams, patches, trigger point injections, Botox, Lidocaine, facet injections, medial branch blocks, radiofrequency ablations and physical therapy. R. 513, 522–25, 555–85, 600–16. Despite these treatments, Bobby continued to report neck pain from the base of his skull to the middle of his shoulders. R. 729.

**Physician Opinions**

On May 15, 2018, state agency physician Donald Williams, M.D., reviewed Bobby's records and determined that he could perform light work with postural limitations, including occasional climbing ramps/stairs, stooping, kneeling, crawling; occasional push and pull; limited bilateral overhead reaching; and avoid concentrated exposure to hazards. R. 86–88.

On June 28, 2018, Bobby's primary care provider, Dr. Skewes, completed a form indicating that Bobby could sit for at least 6 hours a day, stand/walk about 2 hours a day, frequently lift less than 10 pounds, and occasionally lift 20 pounds. R. 624, 690. Dr. Skewes noted that Bobby can hold his head in a fixed down position for a few minutes but must lift his head "because of pain," and cannot hold his head in a fixed upward position. Dr. Skewes found that Bobby cannot rotate his head left to right on a sustained basis, and his pain will frequently

interfere with his attention and concentration. Id. Dr. Skewes determined that Bobby would be absent from work more than four times a month due to his impairments. R. 625.

On July 2, 2018, Bobby's neurosurgeon, Dr. Harron, completed a form noting that Bobby could sit for about 2 hours; stand/walk for at least 6 hours a day; and lift 20 pounds occasionally. R. 642, 687. Dr. Harron determined that Bobby cannot hold his head in a fixed position on a sustained basis and is unable to rotate his head left to right on a sustained basis. Id. Dr. Harron noted that Bobby's pain and symptoms will interfere with his concentration and attention frequently, and he would miss more than four days of work a month due to his impairments. R. 642–43.

On August 14, 2018, state agency physician Wyatt Beazley, M.D., reviewed Bobby's records and determined that he could perform light work with unlimited push and pull, and no postural limitations aside from occasional crawling. R. 99–101.

On August 28, 2019, pain management specialist Dr. Raju completed a form, noting that Bobby could sit, stand and walk about 2 hours in a day; and occasionally lift 10 pounds or less. R. 735. Dr. Raju found that Bobby is unable to hold his head in a fixed position on a sustained basis and is unable to rotate his head left and right on a sustained basis. Id. Dr. Raju determined that Bobby's symptoms and pain would constantly interfere with his attention and concentration, and he would miss work more than four times a month due to his impairments. R. 735–36.

**ALJ's Findings**

The ALJ reviewed Bobby's treatment records in the decision, noting that Bobby's physical examinations reflected cervical spine tenderness, spasms, and range of motion deficits, and his medical providers cautioned him to limit activities that might aggravate his neck symptoms. R. 23. The ALJ stated, "[c]onsidering the claimant's persistent complaints and the

objective findings noted, particularly in the months immediately before and after the second fusion surgery, the undersigned concludes that the above exertional, postural, manipulative, and environmental limitations are appropriate…. Further limitations are not warranted, however, considering the claimant's overall conservative course of treatment since the alleged onset date, together with documented reports of subjective symptoms [sic] relief, and normal motor and sensory findings in both upper extremities." R. 23–24.

The ALJ reviewed the state agency physician opinions and found them "persuasive in the aggregate, with a few qualifications." R. 26. The ALJ noted,

> the postural limitations proposed at the initial level of review appear to be the most consistent with the record as a whole, including the claimant's more recent complaints, treatment, and diagnostic imaging….. After reviewing the complete record, however, the proposed pushing, pulling, and overhead reaching limitations proposed at the initial level of the State agency's review are somewhat overstated relative to the objective medical evidence and the evidence about the claimant's activities of daily living, as summarized in detail previously. For example, as aptly noted by the medical consultant upon reconsideration, a physical examination in July 2018 showed normal finings, including full strength and no atrophy in both upper extremities. The undersigned concludes that a limitation to frequent hand controls and overhead reaching is the most appropriate.

R. 26.

The ALJ considered Dr. Skewes' opinion, and found it "not very well supported," because he "did not provide any narrative rationale for the proposed limitations, apart from a clarification about the claimant's ability to hold his head in a fixed downward position, noting that he would have to lift up his head after a few moments 'because of pain.'" R. 26. The ALJ found Dr. Skewes' opinion "persuasive to the extent that the proposed sitting, lifting, and carrying limitations are consistent with other evidence, including findings of 5/5 strength and no atrophy in the claimant's upper extremities in encounters with Dr. Harron." R. 26. The ALJ also noted that Bobby appeared in no acute distress and displayed appropriate affect during pain

management encounters and took a car trip to Mississippi despite his symptoms. R. 27. However, the ALJ found "the remainder of the proposed limitations are not well supported and are inconsistent with other evidence." Id.  The ALJ pointed to records reflecting that Bobby was in no acute distress and did not have objective findings in his neck or upper extremities. Thus, the ALJ concluded that Dr. Skewes' proposed sitting, lifting and carrying limitations are persuasive, but the remainder of his proposed limitations are unpersuasive.

The ALJ considered Dr. Harron's opinion and found it "not well supported, in that essentially no rational was given other than the statement, 'I feel that [the claimant] is disabled for his work.'" R. 27.  The ALJ concluded that, "the portion of Dr. Harron's opinion that the claimant could stand and walk for at least six hours is consistent with the other evidence, in that there do not appear to be any objective findings related to claimant's gait or balance.  Otherwise, the remainder of the proposed limitations are unpersuasive for the same reasons given in relation to Dr. Skewes' opinion in the preceding paragraph." R. 27.

The ALJ considered Dr. Raju's medical opinion and found the opinion not well supported because no narrative rationale was given, and that the proposed limitations are inconsistent with other evidence, including Dr. Raju's own notes. R. 27. The ALJ noted that Bobby appeared in no acute distress during pain management encounters and displayed appropriate mood and affect despite his pain complaints.  The ALJ also noted that Bobby reported 50% ongoing pain relief from his latest right cervical radiofrequency ablation, and a physical examination showed no new changes overall in 2019. The ALJ concluded, "[s]ince Dr. Raju's disabling assessment is not well supported and is inconsistent with other evidence, including his own treatment notes, the opinion is considered unpersuasive." R. 27.

The ALJ concluded, "[i]n summary, the above residual functional capacity finding is supported by the objective evidence and the claimant's overall medical history related to the period at issue." R. 27.

**Discussion**

Bobby asserts that the ALJ erred by disregarding the mutually consistent opinions of his treating physicians that he cannot hold his head in a fixed position or rotate his head from left to right. Pl. Br. Summ. J. p. 9. Bobby asserts that the ALJ failed to meaningfully analyze those opinions or explain why he did not include limitations in the RFC regarding Bobby's head position or movement. Id. I agree.

Bobby filed his application in February 2018; thus, 20 C.F.R. § 404.1520c governs how the ALJ considered the medical opinions in his case.[5] When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating the persuasiveness of medical opinions, the ALJ will consider five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict the opinion. The most important factors considered are supportability and consistency.[6] Id. The ALJ is not required to explain the consideration of the other three factors. Green v. Saul, No. 5:20-cv-1301-

---

[5] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017.

[6] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

9

KDW, 2021 WL 1976378, at *6 (D.S.C. May 18, 2021). However, when "medical opinions or prior administrative medical findings about the same issue are equally well–supported . . . and consistent with the record," the Commissioner will articulate how he considered the following factors: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

The Commissioner asserts that the ALJ followed the regulations and properly determined that Bobby's treating physician opinions were unsupported and inconsistent with the records. Indeed, the ALJ referenced the appropriate regulations in his analysis and considered the supportability and consistency of each physician opinion. The ALJ provided an analysis of each of the treating physician opinions, and provided reasons that he found their sitting, lifting, and carrying limitations consistent with the evidence. R. 26–27. I agree with the Commissioner that the ALJ provided sufficient reasoning to support his conclusion that the physicians' opinions regarding Bobby's sitting, standing and lifting restrictions are persuasive.

However, the ALJ did not provide reasoning to discount the opinions of all three treating physicians that Bobby cannot hold his head in a fixed upward or downward position or rotate his head left and right. The ALJ did not address these portions of the three opinions in his discussion of their supportability and consistency, and the reasons provided by the ALJ to find the opinions unsupported and inconsistent with the record do not correlate with Bobby's ability to hold his head in a fixed position or rotate it left and right.

Regarding supportability, the ALJ noted the lack of "narrative" support for these opinions, as they are in a checkbox format. However, the supportability factor also includes the extent to which the opinions were supported by relevant objective medical evidence. The physicians' proposed limitations regarding Bobby's ability to hold his head in a sustained

position and rotate it left and right are well supported by the physicians' treatment notes and Bobby's complaints in the record, many of which were included in the ALJ's recitation of the evidence. See R. 23–25.

Bobby's treatment notes with Drs. Harron, Raju and Skewes are replete with statements reflecting that Bobby has difficulty and pain when holding his neck in a sustained position and when participating in increased activities. For example, on June 10, 2019, Bobby reported to Dr. Harron that looking up or looking down for extended periods of time, more than 5-6 minutes, increases his neck pain significantly. R. 684. On January 15, 2019, Dr. Skewes recommended that Bobby be cautious with activities including neck turning, vibrating equipment, and mowing. R. 662. On March 4, 2019, Bobby told Dr. Harron that he gets stinging and spams in his neck, particularly when sitting or driving for longer periods of time. Bobby presented with a cervical paravertebral muscular spasm, and decreased range of motion in his cervical spine with extension, flexion, lateral side-bending to the right and rotation to the right. R. 685. On July 25, 2019, Bobby visited Dr. Raju and noted neck pain from the base of his skull to the middle of his shoulders and a burning pain in his shoulder when doing certain activities with his arms. R. 729. These are just a few examples of the many notations of Bobby's complaints of neck pain and objective findings relating to his cervical spine in the record.

In his recitation of the evidence, the ALJ included multiple notes reflecting that Bobby complained of neck pain and decreased mobility; that he complained of increased neck pain from riding in a car, airplane or riding mower; that Bobby described increased symptoms when holding his neck in certain positions for more than a few minutes, and when driving and sitting; that despite progressing well, he still gets neck symptoms if he overdoes activities; that he complained of increased neck pain after driving to Mississippi with his wife for a family event;

that his symptoms were fairly well controlled with conservative measures as long as he did not push himself too hard with his activities or his neck movements; that he complained of ongoing neck pain affecting his sleep and a burning pain in his shoulders when doing certain activities with his arms. R. 27.

Bobby testified during the administrative hearing that he has trouble looking up and looking down, stating, "[o]nce I start articulating my head left or right or up and down very much I start having pain. The burning and the throbbing it gets more persistent." R. 49. Bobby testified that he has pain with "any type of movement as far as left, right, up and down or even a fixed position I—I have to—I sit this way with my head down. That seems like that's my comfortable position." R. 50.

In discounting the physician opinions, the ALJ relied heavily on records noting Bobby's full strength, lack of atrophy in his upper extremities, lack of acute distress and displaying appropriate mood and affect despite his pain complaints. R. 26–27. The ALJ also noted that Bobby took a car trip to Mississippi.[7] I agree that these findings provide support for the ALJ's determination that Bobby can perform a range of light work. These findings do not, however, support a finding that Bobby can hold his head in a fixed position on a sustained basis, or move his head left to right on a sustained basis. These particularized movements are not dependent upon Bobby's upper extremity strength, whether his muscles have atrophied, or the severity of his distress. Bobby's ability to hold his head in a fixed position and rotate it left and right directly correlates with his cervical degenerative disc disease, the consistent trigger points present at the base of his skull, his ongoing right neck pain and muscle spasm. See R. 520, 523,

---

[7] The ALJ did not include Dr. Harron's full treatment note regarding Bobby's trip to Mississippi, "[h]e states that his daughter was promoted to staff sergeant in the military and he had to drive to Gulfport, Mississippi with his wife for her graduation. He states that this driving activity quite markedly increases neck pain vertically for such long periods of time of driving." R. 684.

573, 581, 589, 616, 638, 685, 684, 721. The treatment providers' findings that Bobby cannot perform such fixed movements with his neck are abundantly supported by Bobby's objective findings upon examination, his complaints to his treatment providers, his testimony, and the other treatment providers' opinions in the record. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017) (noting that a "significant part of the ALJ's misapplication of the treating physician rule was his reliance on cherry-picked evidence skewed to contradict [the claimant's] doctors"); Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (remanding and noting that the ALJ erred by selectively citing from the evidence of record, when the doctor's notes were "more nuanced" than represented by the ALJ).

The record also plainly contradicts the ALJ's statement that Bobby's overall course of treatment has been conservative. R. 24. The record reflects long-term complaints of neck pain that is consistently documented by objective findings. Further, Bobby not only underwent two cervical fusion surgeries, but numerous other treatments, including trigger point injections, radiofrequency ablations, medial branch blocks, creams, patches, Botox, Lidocaine, and physical therapy. If the ALJ considered Bobby's course of treatment conservative, it is difficult to imagine what other "non-conservative" treatments exist.

The ALJ also noted Bobby's daily activities included preparing light meals, taking his relatives to their medical appointments, caring for pets, performing his own personal care, doing some laundry, driving short distances, going out alone, grocery shopping, "hunting if I am able to," and going to church regularly. R. 25. These daily activities also do not require Bobby to hold his neck in a position on a sustained basis, or turn his neck left to right on a sustained basis; and thus, do not discredit the treating physicians' recommended limitations.

The ALJ did not provide sufficient reasons for discrediting the opinions of Bobby's three treating physicians that he cannot hold his head in a fixed position or turn it left or right on a sustained basis. The ALJ did not directly address his decision not to adopt these findings in the RFC, and the reasons provided to discount the treating physicians' opinions do not correspond to Bobby's ability to hold his head in a sustained position or turn it left and right. Overall, the ALJ's decision not to adopt this portion of the treating physicians' opinions is insufficiently explained. These restrictions are consistent throughout the treating physician opinions and are supported by Bobby's treatment notes, his objective medical findings, his complaints to his treating providers and his administrative hearing testimony.

During the administrative hearing, the vocational expert testified an individual who could not hold his head in a fixed upward or downward position on a sustained basis, and could not rotate his head left or right on a sustained basis would be eliminated from all jobs. R. 66. Thus, these limitations, which are included in all three treating physician opinions, are work-preclusive and require specific analysis and consideration by the ALJ.

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. Here, the ALJ did not adequately explain his decision not to adopt the opinions of Bobby's treating physicians that he could not hold his head in a fixed position or turn it left and right on a sustained basis. These proposed limitations are objectively supported by the record and would be work preclusive. Accordingly, I

conclude that substantial evidence does not support the ALJ's decision that Bobby can perform a range of light work.[8]

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that an order be entered **DENYING** defendant's motion for summary judgment, **GRANTING in part** plaintiff's motion for summary judgment, and **REMANDING** this case to the Commissioner.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: November 29, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

---

[8] Because I find that remand is warranted based on the ALJ's failure to adequately explain his decision to discount Bobby's treating physician opinions, Bobby's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).